UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| DAMIEN CORBETT, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:15-cr-00031-GZS-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**ORDER ON MOTION TO EXCLUDE EVIDENCE**

In this action, Petitioner, pursuant to 28 U.S.C. § 2255, seeks to vacate, set aside or correct his sentence. (Section 2255 Motion, ECF No. 121). Following a jury trial, Petitioner was convicted of conspiracy to distribute and possess with intent to distribute oxycodone and oxymorphone; the Court sentenced Petitioner to 100 months in prison. (Judgment, ECF No. 86.) The First Circuit affirmed. *United States v. Corbett*, 870 F.3d 21 (1st Cir. 2017).

Petitioner claims his counsel was constitutionally ineffective for not investigating an recording of an interrogation, which recording he contends includes some gaps in the interrogation, among other errors. (Section 2255 Motion at 4–8.) Petitioner also seeks a new trial based on expert analysis of the interrogation recording, which he contends constitutes new evidence of exculpatory material withheld by the Government before trial in violation of his due process rights. (New Trial Motion, ECF No. 123 at 13.) The Government requests dismissal of the motions. (Response, ECF Nos. 140, 141.) The

matter is presently before the Court on Petitioner's motion to exclude a recently discovered version of the recording. (Motion to Exclude, ECF No. 160.)

Following a review of the record and after consideration of the parties' arguments, the Court denies Petitioner's motion to exclude the evidence. The Government may introduce the recently discovered version of the recording on habeas review, but Petitioner will be allowed to supplement his § 2255 motion and present additional expert testimony to address the issues generated by the recording.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 2014, law enforcement officials arranged for several controlled buys of oxycodone pills from two dealers, Taysha Gillis and Kenneth Gerrish. Gillis and Gerrish were arrested in December 2014 and law enforcement found hundreds of pills in two safes in Gillis's bedroom closet. Gillis and Gerrish identified Petitioner as the source of the pills. Gillis, working with law enforcement, arranged a meeting with Petitioner purportedly to repay Petitioner for his share of the proceeds from selling pills that he had provided.

On December 19, 2014, Petitioner and Gillis, who was wearing a wire to record the conversation, met in Petitioner's car. Because the radio was on, some of the discussion between Petitioner and Gillis is difficult to decipher in the audio recording. The Government argued at trial that the audio recording showed that Petitioner and Gillis had discussed the amount she owed to him and that Petitioner implied he would return the next day to get more pills for her. Gillis gave Petitioner $2,560 and left Petitioner's car, at which point Petitioner was arrested. Petitioner was taken to the Kittery police station, where he was interviewed by law enforcement for approximately fifteen minutes after

being advised of his *Miranda* rights. A video recording of the interview was made using a proprietary system called Milestone.

In January 2015, Petitioner was indicted on one count of conspiracy to distribute and possess with intent to distribute oxycodone and oxymorphone in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). (Indictment, ECF No. 1.) A jury trial was held over three days in December 2015. (ECF Nos. 62–64.)

During the testimony of Agent Galbadis, one of the federal agents who interviewed Petitioner in Kittery, the agent explained that some parts of the discussion were missing from the recording. (Tr. Vol. 1 at 171–72, ECF No. 103.) The agent testified that he did not have any control over the recording system and believed it was running the entire time, but later discovered that portions were not captured in the recording. (*Id.*) On cross-examination, Agent Galbadis said that it was his understanding that the recording system works on motion sensors and the gaps in the recording were due to a lack of motion during portions of the interview. (*Id.* at 174–75.) On re-direct examination, the Government played a copy of the recording. (*Id.* at 177–79). The Government noted that portions of the interview were missing from the recording as reflected by the running timestamp and the gaps in the colored bars at the bottom of the screen. (*Id.* at 179 – 81.)

The jury found the defendant guilty, (Jury Verdict, ECF No. 67), and in May 2016, the Court sentenced Petitioner to 100 months in prison. (Judgment, ECF No. 86.) The First Circuit affirmed the conviction in September 2017. *Corbett*, 870 F.3d at 24.

In his postconviction filings, Petitioner alleges that the agents made a number of racist comments during the interview, to which Petitioner refrained from demonstrating his

anger in order to protect his safety. (Corbett Declaration at 1–3, ECF No. 121-4.) Petitioner claims to have told his trial attorney about the racist comments and that he was assured that his attorney would investigate the issue. (*Id.* at 4–5.) Petitioner asserts that when he reviewed a copy of the recording before trial, he immediately noticed that it was incomplete and that the racist statements were missing from the recording. (*Id.* at 5.) Petitioner asserts that his attorney relayed the Government's explanation about the motion detection equipment and said that while he advised against it, if Petitioner wanted to press the racist comments issue, he would have to testify at trial. (*Id.* at 5–6.)

Petitioner also presented an expert evaluation of the Kittery Police Department recording equipment and the copy of the video that was introduced at trial. (Garneau Declaration, ECF No. 121-3.) Based on the fact that the file format was a generic WMV video apparently made using a screen capture of the Milestone software, rather than Milestone's XProtect export format, and based on the fact that some of the gaps in the video occurred while the participants were in motion, the expert concluded that portions of the video had been redacted. (*Id.*)

During the next sixth months, the Government and Petitioner's postconviction counsel exchanged discovery such as inspections and interviews, and the Government obtained its own expert analysis of the video introduced at trial while it worked to locate any other versions of the recording which might exist. (Government's Memorandum at 2–4, ECF Nos. 159; Motion to Exclude at 2–6.) The parties believed that the U.S. Attorney's Office converted an earlier version of the recording to the WMV format in preparation for trial, and that the earlier version or versions were no longer available. *Id.* During the

parties' communications, in order to conclude discovery, the Government expressed its willingness to stipulate that no other versions of the recording currently existed. (*Id.*) As part of his reply to the Government's response to Petitioner's post-conviction motions, Petitioner submitted a copy of the Government's video analysis, which did not rule out redactions. (ECF No. 145-1.)

In January 2020, the Court scheduled an evidentiary hearing on the post-conviction motions for March 11, 2020. (ECF Nos. 146, 147, 148.) In February 2020, in preparation for the evidentiary hearing, the Government discovered records of an unconverted copy of the video in Milestone's XProtect format, as well as records that reflect that before trial, the version was provided to defense counsel along with other documents. (ECF No. 159-6.)

The parties raised the issue of the recently discovered recording with the Court during a pre-hearing telephonic conference on March 5, 2020. (ECF No. 157.) Based on the information provided by the parties, the Court scheduled a hearing on the issue for March 11 and directed the parties to file written argument on the issue. As part of his submission, Petitioner filed the motion to exclude the recently discovered version of the recording. (ECF No. 160.)

## DISCUSSION

Petitioner argues that the recently discovered version of the interview recording should be excluded because the Government forfeited or waived any defenses related to alternate versions by failing to produce them earlier and by agreeing that no other versions of the interview recording existed.

5

Generally, the ordinary rules of forfeiture and waiver apply in habeas cases. *See* Rule 12 of the Rules Governing Section 2255 Proceedings (applying the Federal Rules of Civil and Criminal Procedure to the extent they are not inconsistent); *Day v. McDonough*, 547 U.S. 198 (2006) ("Ordinarily in civil litigation," an affirmative defense "is forfeited if not raised in [an] . . . answer or in an amendment thereto"). "Waiver is the intentional relinquishment or abandonment of a claim or defense," whereas forfeiture "arises when a party has failed to make a timely assertion of a right." *United States v. Coleman*, 884 F.3d 67, 72 n.2 (1st Cir. 2018) (internal quotations and citations omitted).

The concepts of waiver and forfeiture, however, are not inflexible. See *Oakes v. United States*, 400 F.3d 92, 97 (1st Cir. 2005) (noting in a habeas case that where "institutional values that transcend the litigants' parochial interests . . . are in play, the court should have some say in deciding whether a defense should be considered or deemed waived"). District courts generally "enjoy broad discretion in respect to the ordering and presentation of proof and the handling of evidentiary questions," *United States v. Holmquist*, 36 F.3d 154, 163 (1st Cir. 1994), and an additional measure of flexibility applies on habeas review. *See United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) (noting the "broad leeway traditionally afforded district courts in the exercise of their § 2255 authority"); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("habeas corpus is, at its core, an equitable remedy"); *Harris v. Nelson*, 394 U.S. 286, 291 (1969) ("The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.")

Petitioner asks the Court to invalidate and vacate his conviction based in part on law enforcement's alleged intentional alteration of material evidence (i.e., the interrogation recording). The Government represents that the recording (1) existed before the conversion of the recording to WMV format, (2) was forwarded to Petitioner's trial counsel, and (3) would have been extremely difficult to alter as alleged by Petitioner. The Government thus maintains that the recently discovered recording constitutes compelling evidence of the lack of merit of Petitioner's principal argument in support of his request for habeas relief.

Based upon a review of the record, the Court is convinced that application of waiver or forfeiture to the Government's ability to present the XProtect version of the interrogation recording would exclude highly probative evidence concerning Petitioner's claim. To exclude the evidence would not only hinder the Government's ability to challenge Petitioner's serious allegation of wrongdoing by law enforcement, but exclusion would deprive the Court of relevant evidence that could assist the Court in its assessment of whether law enforcement engaged in the misconduct alleged. Furthermore, the record lacks any evidence to suggest that the Government was aware of the recording, but withheld production of the recording for strategic purposes. Finally, any prejudice to Petitioner based on when the Government informed him of the recording (i.e., within a few weeks of the scheduled evidentiary hearing on Petitioner's § 2255 motion) can be mitigated by permitting Petitioner to supplement the factual basis for his video-related claim and to

designate an expert or experts to address the issues generated by the recently discovered recording. Exclusion of the evidence, therefore, is not warranted. [1]

## CONCLUSION

Based on the foregoing analysis, the Court denies Petitioner's motion to exclude the recently discovered version of the interrogation recording. (ECF No. 160.) Petitioner may supplement the factual basis for his video-related claim and may designate an expert or experts to address the issues generated by the recently discovered recording. The Court will schedule a telephonic conference to schedule future proceedings in the matter.

## **NOTICE**

Any objections to this order shall be filed in accordance with Federal Rule of Civil Procedure 72 and Federal Rule of Criminal Procedure 59.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of March, 2020.

---

[1] Petitioner has not conceded that the disk was sent to his trial attorney, who is deceased, and his postconviction counsel is still in the process investigating that question. Whether the disk was disclosed before trial is a factual question relevant to the ultimate resolution of the postconviction motions. The Court does not need to resolve that question at this time because there is no evidence or suggestion that the Government acted in bad faith by withholding the evidence during postconviction review and because the Court has determined that it is not appropriate to exclude the evidence from the habeas record even if the disk was not sent before trial.